IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| VS. | § | CR. NO. C-16-848 |
| JUAN SANCHEZ | § | |

## BRIEF IN SUPPORT OF SUPPRESSION HEARING

**NOW COMES** Defendant **JUAN SANCHEZ**, by and through his attorney, Assistant Federal Public Defender KRISTEN D. LANGFORD, and respectfully renews his request that this Court suppress any and all evidence acquired by the Government as a result of the illegally prolonged detention and illegal search of Mr. Sanchez's backpack. In support of this motion, the Defendant shows this Court the following:

### Background

Mr. Sanchez is charged by indictment with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On December 22, 2016 Mr. Sanchez filed a motion to suppress the evidence and a hearing on the motion was held on January 5, 2017. This Honorable Court allowed the parties additional time to file briefing on the motion to suppress.

### Legal Argument

Mr. Sanchez seeks to suppress two pieces of evidence: (1) the Jimenez Arms, Model J.A. Nine, 9mm pistol with serial number 012692 and (2) the alleged synthetic marijuana found in multiple small bags within the backpack. He asserts that the initial stop was legal but was then extended beyond constitutional limits without further reasonable suspicion after the conclusion of

the original purpose of the stop; and that there was no consent given to search his backpack. Furthermore, if the court finds some sort of consent was given, Mr. Sanchez claims that the consent was not voluntary and was not free from psychological coercion and/or duress. The government cannot support its burden and the firearm and alleged synthetic marijuana recovered during the unlawful detention and illegal search should be suppressed.

**A. The extension of the Terry stop was not supported by further reasonable suspicion; therefore, the detention was illegally prolonged.**

This encounter first requires us to look at the *Terry* "reasonable suspicion" analysis. *See Terry v. Ohio,* 392 U.S. (1968). Under *Terry,* the reasonable suspicion analysis involves two steps. One must examine whether the agent's stop (1) "was justified at its inception" and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 19-20. It is uncontroverted that law enforcement may make investigatory stops, i.e., *Terry* stops, when supported by reasonable suspicion that a person is engaged in criminal activity. *Id.* at 20-21. The Fifth Circuit has previously stated that "reasonable suspicion requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *U.S. v. Gonzalez*, 190 F.3d 668, 671 (5thCir. 1999), citing *U.S. v. Sokolow,* 490 U.S. 1, 6-8 (1989). Moreover, reasonable suspicion requires a "minimum level of objective justification" that is "supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." *U.S. v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994).

An officer must have an *objectively* reasonable suspicion that some sort of illegal activity, occurred, or is about to occur, before conducting a stop. It is agreed that Officer Whitehead and Lieutenant Kless had lawful justification to stop and detain the individuals, based on the

domestic disturbance call reported through the 911 Emergency System.

Under the second prong of the Terry analysis, "a detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *U.S. v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). The Supreme Court has informed us that the touchstone of the Fourth Amendment is "reasonableness," which is analyzed objectively "by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 38 (1996).

In the present case, the officers stopped Mr. Sanchez and Jessica Lozano due to a 911 call reporting a possible domestic disturbance where the male was trying to walk away and the female kept following him. When the officers arrived to the scene, they separated the individuals and questioned them about the nature of the 911 call to determine if a crime had been committed and to determine if any further action needed to take place. Once the officers understood the nature of the situation, they decided that no arrests would be made and that they would resolve the issue by separating the two individuals for the evening.

They told the female, who was barefoot and had children waiting at home, to walk home; they did not offer her a ride. The officers did not allow Mr. Sanchez to get up from the curb and continued to talk to him about how he could handle this type of situation in the future, gave him kudos for working hard and gave him some general life advice. The officers assured him that they were not going to arrest him (as is heard in the dash cam video) and both officers testified in court at the suppression hearing that the purpose of the original stop was complete and that they had found and accomplished a solution to the problem, separation of Mr. Sanchez and Ms. Lozano. No evidence was admitted, mentioned, or even hinted to that there was further reasonable suspicion that would allow the officers to continue to detain Mr. Sanchez past the

purpose of the original stop.

At that point, the officers should have allowed Mr. Sanchez to continue walking to his original destination. However, the officers insisted that they give Mr. Sanchez a ride to his destination so that they would not get more disturbance calls for the evening. Mr. Sanchez told the officers very clearly that he did not need the ride and actually wanted to walk to clear his head. He stated to the officers that he was going to his friend's house which was a short distance away, that the friend was home and that he would call his sister at 8:00 pm to stay with her. Lt. Kless admitted that the distance Mr. Sanchez was going was approximately 1- 1 ½ miles away.

The officers also both admitted that they gave Mr. Sanchez no other options but to ride in their patrol unit. They testified that they did not let Mr. Sanchez walk away to his friend's house, that they did not allow him to call his friend or family to pick him up, they did not allow him to walk while they followed behind him, they did not allow him to stay on the sidewalk and clear his mind, nor did they allow him to place his backpack in the trunk or front portion of the patrol unit (as Lt. Kless stated was and has been used as an option before). The dash cam video is clear, neither of the two officers are ever heard giving Mr. Sanchez an option or a choice as to how he could leave the area. He had to take a ride in the officer's patrol unit, with or without his permission.

Defense can agree that the initial stop following the 911 disturbance call was within the purview of the officers involved in this case; however, once they determined that everything was okay and that no assault or family violence had occurred, they concluded their investigation and should have allowed Mr. Sanchez to walk to his friend's house as he requested. However, they extended the detention illegally without further reasonable suspicion because they decided that Mr. Sanchez was to be driven to his friend's house in the patrol unit.

**B. No consent was given to allow the officers to search the backpack.**

The officers testified at the suppression hearing that it is a police department rule to always search a person's belongings before they ride in an officer's patrol unit. Once the officers insisted on giving Mr. Sanchez a ride and did not give him any other options, they advised him that they have had instances where people have had weapons in their belongings and that they would have to search his backpack. Mr. Sanchez clearly states, as is heard in the dash cam video audio, that he would like to walk to his friend's house and that he did not need the ride. The officers state they will have to give him a ride or they will get more disturbance calls. He was never given a choice about the ride and he never agreed to take the ride.

Likewise, he was never given a choice about the search of the backpack. It is clear from the dash cam audio that a request to search his backpack was never made. In fact, when you listen carefully to the background noise in the dash cam video, you can hear Officer Whitehead demand twice that Mr. Sanchez "take off the backpack" in a stern voice. He also acknowledged that fact in the suppression hearing. Mr. Sanchez had no choice to make at that point, he merely followed an order given by a uniformed police officer. These officers did not have a warrant, they did not have reasonable suspicion, they did not get consent to search the backpack. They told Mr. Sanchez he was going to get a ride in the patrol unit and they demanded him to give them his bag to search.

Lt. Kless tried to testify that there was some sort of non-verbal consent given to take a ride in the patrol unit, this is not corroborated by any evidence or testimony. In fact, testimony was given that Mr. Sanchez did not move from the curb at any time during the encounter. Lt. Kless could not articulate what sort of non-verbal communication was given by Mr. Sanchez but one can imagine this is not true since no question was asked about taking the ride and no body movements were made by Mr. Sanchez such as standing up to get in the car, or moving toward the unit, or

opening the car door, or voluntarily removing his backpack. No evidence was presented and defense argues none exists to show some sort of non-verbal consent to taking the ride in the patrol unit. Likewise, nothing was done on Mr. Sanchez's part to indicate consent to search the backpack.

The officers testified in the hearing that Mr. Sanchez took his backpack off voluntarily but then testified that the backpack was removed after the order from Officer Whitehead to "take off the backpack". Thus, this movement cannot be construed as consent to search, rather acquiescence to an order made by a uniformed police officer. Vitiating any argument for voluntary consent to search the backpack.

## C. If consent is found, the consent was involuntary and not free from coercion and/or duress.

Mr. Sanchez maintains that there was an illegally prolonged detention followed by an unconstitutional search of the backpack with no warrant, consent, or other exception to the warrant requirement. However, if the Court finds that somehow the detention (beyond the stop's original purpose) was justified **and** that there was some sort of consent given to take the ride in the officer's patrol unit **and** consent was given to search the backpack, defense submits that the consent was involuntarily obtained and thus the search was unconstitutional.

Defense agrees that even when reasonable suspicion does not justify a search, it does not necessarily constitute a Fourth Amendment violation. *United States v. Cavitt*, 550 F.3d 430, 438 (5th Cir.2008). Consensual encounters "do not implicate Fourth Amendment concerns". *Id. citing United States v. Brigham* at 508. If a challenge is made to the voluntariness of consent to search, the Government must prove voluntariness by a preponderance of the evidence. *United States v. Arias-Robles*, 477 F.3d 245, 248 (5th Cir. 2007); *See also*: *United States v. Santiago*, 410 F.3d 193 (5th Cir. 2005). The Supreme Court outlined six factors the Court should consider

when reviewing voluntary consent under a totality of the circumstances test. The Court of course iterated that no one of these six factors is dispositive: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *Id.; See also: United States v. Hernandez,* 279 F.3d 302 (5th Cir. 2002).

In the instant case, all of the factors mitigate in the defendant's direction. First, Mr. Sanchez, as mentioned earlier, was not free to leave the scene. Both officers testified to the fact that they did not tell Mr. Sanchez he could walk to his friend's house or walk anywhere or offer him any other options other than riding in their patrol unit. He sat in the same location on the curb throughout the encounter until he was picked up to be handcuffed. Mr. Sanchez's custodial status was completely involuntary, if not, he would have started walking to his friend's house after the disturbance call encounter was complete as he requested the officers allow him to do. His request was effectively denied when the officer stated they would have to give him a ride or else get more disturbance calls.

Second, coercive police procedures do not always present themselves in the form of physical abuse or hostile behavior. Officers play the "good cop / bad cop" routine all the time in order to get information or evidence they are seeking. Here, the officers were extremely respectful and even stated that they were more on Mr. Sanchez's side than the female's side. They identified with Mr. Sanchez and gave him praise for his hard work and offered him life advice. The officers stated that they were offering Mr. Sanchez a ride to protect him from other 911 calls. Psychological coercion is no less severe than physical duress and should be considered

in this context.

Third, Mr. Sanchez was respectful with the officers and did not cause them trouble, however, he did not completely cooperate with the officers in every instance during the encounter. When the officers indicated they were going to give him a ride in their unit and therefore were going to search his backpack, he respectfully told them that he did not need the ride and wanted to walk to his friend's house.

Fourth, both Lt. Kless and Officer Whitehead acknowledged that they did not inform Mr. Sanchez of his right to refuse the ride or the search. Mr. Sanchez further testified that he did not remember a time when anyone informed him of that right until after this arrest.

Fifth, Mr. Sanchez graduated from high school and is in his early 20's; however, he has never had any formal legal or criminal justice training, does not watch legal television shows or movies, does not have any close family members or friends who are lawyers and has had several very negative encounters with law enforcement where he does not remember being explicitly advised or explained his rights. The government may try to make the argument that because of Mr. Sanchez criminal history, he should know of his rights. However, defense argues the opposite is true. Mr. Sanchez testified that he has had several negative encounters with police officers. On one occasion, he was charged with resisting arrest for trying to walk away from an officer and was subsequently was beat up badly by the officers. His negative experiences with law enforcement have not secured knowledge of his rights, to the contrary, they have reinforced the belief that he does not have certain rights, cannot simply say no to an officer and walk away and cannot refuse an officer's order.

Finally, Mr. Sanchez believed that incriminating evidence could be found because of the alleged synthetic marijuana and the gun in the backpack and therefore did not want to consent

to the search and in fact did not consent, he only complied with an order given by a uniformed police officer to take the backpack off and allow a search.

The Government has not met this burden here. Mr. Sanchez was presented a Hobson's choice (take it or leave it), not offered a request for consent. The officers made it clear they were not going to let Mr. Sanchez leave that curb without getting in the patrol unit and without a search of the backpack. They offered him absolutely no other option, even though options were available and the officers acknowledge that fact. The officers were respectful, yet that does not mean their actions were constitutional. Mr. Sanchez never felt that he could get up from the curb and walk away at any time, even after the original purpose for the detention was complete. He did try to refuse the ride in the patrol unit but was denied that refusal, he tried to refuse the search of the backpack but was ordered to take it off to allow for a search.

**WHEREFORE, PREMISES CONSIDERED, JUAN SANCHEZ** prays this Honorable Court will grant his motion for suppression of any evidence seized or acquired from his illegal prolonged detention and illegal search.

Respectfully submitted,

MARJORIE A. MEYERS
Federal Public Defender
Southern District of Texas No. 3233
Texas State Bar No. 14003750

By: /s/ Kristen D. Langford-Harris
KRISTEN D. LANGFORD-HARRIS
Assistant Federal Public Defender
Texas State Bar No. 24058875
Southern District of Texas No.1550211
606 North Carancahua, Suite 401
Corpus Christi, Texas 78401
Phone: (361) 888-3532
Fax:    (361) 888-3534

**CERTIFICATE OF SERVICE**

    I, Kristen D. Langford, do hereby certify that on the 6th day of January, 2017, a copy of the foregoing Brief in Support of Suppression Hearing regarding the Motion to Suppress was served by Notification of Electronic Filing to Assistant United States Attorney Lance Watt, 800 North Shoreline, Suite 500, Corpus Christ, Texas 78401.

    /s/ Kristen D. Langford-Harris

    KRISTEN D. LANGFORD-HARRIS