Case 2:16-cr-00848   Document 25   Filed in TXSD on 02/17/17   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
February 17, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:16-CR-848 |
| | § | |
| JUAN SANCHEZ; aka SANCHEZ | § | |

## ORDER GRANTING MOTION TO SUPPRESS

Before the Court is Defendant Juan Sanchez's (Sanchez's) Motion to Suppress Evidence (D.E. 16). Sanchez is charged by indictment (D.E. 1) as a felon in possession of a firearm. The firearm was discovered as a result of a search of Sanchez's backpack. Sanchez argues that the search violated the Fourth Amendment protection against unreasonable search and seizure. The Government filed a response to the motion (D.E. 17), and the Court held a hearing on January 5, 2017. The parties then filed supplemental briefing (D.E. 23, 24). After due consideration of the evidence and the arguments of the parties, the motion (D.E. 16) is GRANTED.

### FACTS

On August 26, 2016, at 7:20 p.m., Corpus Christi police officers Lieutenant Nicholas Kless[1] and Officer Billy Whitehead[2] responded to a 9-1-1 call reporting an ongoing disturbance between a man and a woman. They arrived at the scene a few minutes apart where they found Sanchez and his girlfriend. The girlfriend had blood on her shirt which was determined to be from cuts on Sanchez's fist. Sanchez and his

---

[1] Lieutenant Kless has been a police officer in Corpus Christi for 26 years and a lieutenant for the last seven years. He is a supervisor in the uniform patrol division.

[2] Officer Whitehead has been a police officer since April 2010.

girlfriend had had a disagreement, Sanchez punched a mirror or wall, and he then left the house to get away from the situation. The girlfriend followed him down the street, attempting to convince him to return home. The officers determined that an assault had not occurred and Sanchez was attempting to get away from his girlfriend to defuse the situation.

The officers instructed the girlfriend to go home, but she kept returning to the scene. Sanchez told the officers that he was walking to a friend's house which was a couple of blocks away. However, Lieutenant Kless testified that the friend's house was a couple of miles away. Sanchez was cooperative and respectful and the officers were cordial.

The Government presented a dash-cam recording of the incident. The camera did not capture the incident, but portions of the conversation between the officers and Sanchez can be heard. The high winds affected the quality of the recording. Lieutenant Kless is heard asking Officer Whitehead to give Sanchez a ride to the friend's house. Immediately thereafter, one of the officers asks Sanchez if he has anything illegal in his backpack. Sanchez responds "no" and asks if he can walk to his friend's house so that he can clear his head. Lieutenant Kless informs Sanchez that if he walks through the neighborhood, there might be additional calls to the police and they would have to return. Lieutenant Kless testified that he was concerned that people would report Sanchez because of his appearance—he was shirtless and extensively tattooed.

As Lieutenant Kless is heard explaining why the officers should give Sanchez a ride, Officer Whitehead twice instructs Sanchez to remove his backpack. The officers

explain that they have to search the backpack for their safety because they are allowing Sanchez to ride in the police unit.

Officer Whitehead testified that after Sanchez took the backpack off, Sanchez began opening it but, for safety reasons, the officers instructed him to hand it over so that they could search it. After looking in the backpack, they found packages of synthetic marijuana. Sanchez was arrested for the marijuana and on further search of the backpack, a handgun was found.

Lieutenant Kless testified that he asked Sanchez if they could give him a ride to his friend's house. Sanchez agreed to go so he told Sanchez to step into Officer Whitehead's police unit and Sanchez moved toward the unit. Lieutenant Kless was not sure if Sanchez verbally agreed or if he somehow nonverbally agreed to the ride, but it was clear that he agreed to the ride. Lieutenant Kless was unsure if Sanchez was sitting on the curb throughout the encounter. Sanchez stated that the officers never let him get off the curb, where he was sitting as he had been instructed to do so.

Officer Whitehead testified that Sanchez never said he did not want to get in the patrol car. And it is standard procedure to check bags of individuals who ride in patrol cars for safety reasons. Officer Whitehead asked Sanchez for permission to look in the backpack and Sanchez answered affirmatively and voluntarily opened the backpack. For safety reasons, the officers asked Sanchez to hand it over. Officer Whitehead could not remember verbatim what he said to Sanchez—can we look in the backpack or we need to look in the backpack—but he testified that it was a request for permission to search the backpack and not an order.

Sanchez testified that his education is limited to high school and he was unaware that he had a right to refuse the search of the backpack. He also said that he had previous encounters with law enforcement that ended in him being subjected to excessive force because of his refusal to cooperate with officers. Thus, when the officers asked Sanchez to take the backpack off and hand it over, he felt that he had no choice but to allow the officers to search it. He said that consent to search his backpack was never requested. The officers just told him to take it off and hand it over. He further testified that the officers never asked him if he was willing to ride in the patrol car and he felt obligated to take the ride. He also said that he asked for permission to go on his way, but the officers refused his request.

Sanchez admitted to having an extensive criminal record and many encounters with law enforcement officers. His criminal record includes convictions for evading and resisting arrest, escaping from custody, theft, drug offenses, carrying a weapon, and graffiti. He admitted that the officers were cordial and treated him respectfully, but he never accepted a ride from the officers and they never requested his consent to search the backpack.

## DISCUSSION

Sanchez complains that (1) Lieutenant Kless and Officer Whitehead unnecessarily prolonged the initial detention and therefore exceeded what is reasonable for a *Terry* stop; (2) no consent was given for the search of the backpack; and (3) if consent was given for the search, it was involuntary. Because this case involves a warrantless search, the Government bears the burden of proving by a preponderance of the evidence that the

search was consistent with the Fourth Amendment. *See, e.g., United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001) (*citing United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993)).

### A. Length of the *Terry* stop

An investigatory detention, such as the one in this case, is lawful under the Fourth Amendment when justified at its inception by a reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). "[A] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc). Sanchez concedes that his initial detention was justified by a reasonable suspicion that an assault had occurred or would soon occur, but he argues that the stop was impermissibly prolonged.

After questioning Sanchez and his girlfriend, the officers quickly concluded that no assault had occurred. However, to prevent further problems, they determined that it would be best to keep the girlfriend away from Sanchez. But Sanchez's girlfriend refused to leave so they offered Sanchez a ride to remove him from the situation and because they did not want him walking through the neighborhood. At the time the backpack was searched, the encounter between the officers and Sanchez had lasted less than seven minutes. The Court finds that the officers did not unreasonably prolong the initial detention. They were trying to prevent an assault or a further disturbance from occurring.

### B. Consent to Search

A warrantless search by police constitutes a violation of the Fourth Amendment and is invalid unless it falls within one of the recognized exceptions to the Constitution's warrant requirement. *Flippos v. West Virginia*, 528 U.S. 11, 13 (1999) (*citing Katz v. United States*, 389 U.S. 347, 347 (1967)). One exception to the warrant requirement is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (*citing Davis v. United States*, 328 U.S. 624, 630 (1946)). "In order to satisfy the consent exception, the government must demonstrate that there was (1) effective consent, (2) given voluntarily, (3) by a party with actual or apparent authority." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Consent may be express or implied. *See id.* at 441-42.

Sanchez argues that he did not give consent for his backpack to be searched. There is conflicting evidence as to whether the officers requested Sanchez's permission to look in his backpack and whether consent was given expressly or impliedly. The audio recording reflects that the officers instructed Sanchez to take the backpack off and hand it over after asking him if he had anything illegal in the bag. The Government argues that the officers explained to Sanchez that searching his backpack was a condition of accepting the officer's ride and that by accepting the ride, Sanchez impliedly consented to the search. However, there is conflicting evidence regarding whether Sanchez agreed to the ride. Lieutenant Kless testified that Sanchez agreed to the ride. The audio recording reflects that Sanchez stated that he wanted to walk to his friend's house and Sanchez testified that he asked to leave the scene, but was not allowed to.

The Court finds that the Government has failed to meet its burden to prove that consent for the search was given.  Although the Court has found that consent was not established, the Court will address Sanchez's alternative argument that to the extent there was implied consent, it was not voluntary.

Voluntariness is a factual determination that courts must decide from the totality of the circumstances.  *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995).  There are six factors that courts consider when determining whether consent was voluntary:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Id.* (*quoting United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1998)).  "[A]lthough all of the above factors are highly relevant, no one of the six factors is dispositive . . . ." *Id.*

Sanchez's custodial status was not voluntary.  He was cooperative with the officers in explaining the disturbance with his girlfriend, but he also informed the officers that he wanted to continue on his way.  The Government argues that because of Sanchez's extensive criminal history and his numerous interactions with law enforcement officers, he was aware of his right to refuse consent.  Sanchez testified that he did not know that he had the right to refuse the search and his previous encounters with police officers made him believe that he could not reject the officers' instructions.  Sanchez's

education is limited to a high school diploma. And the backpack was his so it is safe to infer that he was aware the backpack contained incriminating evidence.

Considering the totality of the circumstances, the Court finds that the factors weigh in Sanchez's favor. Consequently, the Government has not established voluntary consent.

## CONCLUSION

The facts of this case present a close call as to whether consent to search was requested, given, and if given, whether it was voluntary. The officers handling of a difficult situation was commendable. However, the Court finds that the Government did not meet its burden to show that consent to search the backpack was given by Sanchez or if given, that it was voluntary. Accordingly, Defendant Juan Sanchez's motion to suppress (D.E. 16) is GRANTED.

ORDERED this 17th day of February, 2017.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE